# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

KAREEM LEE,

                              Plaintiff,

       vs.                                    9:13-CV-1022
                                                       (TJM/ATB)

DAVID O'HARER, et al.,

                            Defendants.

_____

KAREEM LEE, Plaintiff pro se
RACHEL M. KISH, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Thomas J. McAvoy, Senior United States District Judge.

In this civil rights complaint, plaintiff alleged that defendants O'Harer and Mattie denied plaintiff access to courts; defendants O'Harer, Mattie, Kimak, and Graham retaliated against plaintiff for filing a New York Court of Claims ("Court of Claims") action; defendants Mattie and Kimak used excessive force against him; defendants O'Harer and Graham failed to conduct adequate investigations; defendant Mattie destroyed some of plaintiff's property; and defendant Graham failed to correct staff misconduct after he learned about the misconduct through reports. (*See generally* Compl.) (Dkt. No. 1).

After initial review, on November 7, 2013, Senior Judge McAvoy dismissed

several of the above claims. (Dkt. No. 8). There are two claims remaining in this action: (1) the First Amendment retaliation claim against defendants O'Harer and Mattie (a sergeant and a corrections officer); and (2) an Eighth Amendment excessive force claim against defendants Mattie and Kimak. (Dkt. No. 8 at 14). Presently before the court is the defendants' motion to dismiss this action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 23). Plaintiff has responded in opposition to the motion, and defendants have filed a reply. (Dkt. Nos. 28, 29). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## I.  <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The

court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). In light of the mandate to read the papers of pro se litigants generously, it is appropriate to consider plaintiff's additional materials, such as the factual statements in his memorandum in opposition to the defendants' motion if those statements clarify or "amplify" matters in the complaint. *Dolan v. Connolly*, No. 13 Civ. 5726, 2014 WL 1876524, at *1 (S.D.N.Y. May 8, 2014) (Rep't-Rec.) (citing inter alia *Woods v. Goord*, No. 01 Civ. 3255, 2002 WL 731691, at *1 n.2 (S.D.N.Y. Apr. 23, 2002)).

## II.  Facts

The court will outline the facts of this case relative to the two remaining claims. The court has examined the complaint and plaintiff's response to defendants' motion to dismiss in which he has clarified the factual assertions that he made in the complaint. Plaintiff's claims arose out of his incarceration at Auburn Correctional Facility ("Auburn"). Plaintiff alleges that on November 2, 2011, he filed an action in the Court

3

of Claims for "medical negligence" against defendants at Attica Correctional Facility ("Attica"). (Compl. at 3).  On June 13, 2013, plaintiff was placed on a list at Auburn, granting him "special access" to the law library because he had a June 27, 2013 deadline in his Court of Claims action. (*Id.* at 4).  Defendant O'Harer removed plaintiff from the special access list on June 20, 2013 because plaintiff had allegedly missed two library call-outs. (*Id.*)  Plaintiff alleged that defendant O'Harer never "investigated"[1] why plaintiff missed the call-outs, but also claims that defendant O'Harer denied plaintiff access to the law library "in retaliation" for plaintiff's pending Court of Claims action. (*Id.* at 5, 12-13).  Plaintiff states that on June 28, 2013, he filed a grievance against defendant O'Harer for his actions.

Plaintiff claims that defendant O'Harer had "numerous conversations" with defendant Mattie and discovered that plaintiff was housed in defendant Mattie's "area." (*Id.* at 6, ¶ 15).  Apparently at the behest of defendant O'Harer, on June 22, 2013, defendant Mattie misinformed plaintiff that he had a law library call-out, when plaintiff knew he had been removed from the special access list.  Plaintiff asserted that defendant Mattie hoped that plaintiff would attempt to go to the library, based upon this information, and then defendant Mattie would be able to file a misbehavior report against plaintiff for being "out of place, and, or, place something in plaintiff['s] cell that consisted of contraband." (*Id.*)  Plaintiff claims that defendant Mattie did this "in

---

[1] Plaintiff apparently did not dispute that he missed the call-outs, but asserted that his prison job prevented him from attending the law library.  Plaintiff's claim that O'Harer did not properly investigate the reasons for plaintiff's missing the call-outs was dismissed in Senior Judge McAvoy's initial order. (Dkt. No. 8 at 9-10).

retaliation for Officer David O'harer [sic]."[2] (*Id.*)

When defendant Mattie's alleged plan failed, on June 30, 2013, plaintiff claims that defendant Mattie filed a false misbehavior report against plaintiff, alleging that plaintiff approached her while masturbating. (*Id.* at 6-7). Plaintiff claims that defendant Kimak, defendant Mattie, and other unknown officers assaulted plaintiff prior to taking plaintiff to the Special Housing Unit ("SHU"), after issuing the false misbehavior report. (*Id.* at 6-7). Finally, plaintiff alleges that when defendants Mattie and another unknown officer were packing plaintiff's cell on June 30, 2013, they destroyed legal documents in retaliation for plaintiff filing the grievance against defendant O'Harer.

## III.  **Exhaustion of Administrative Remedies**

### A.  **Legal Standards**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004). Inmates must exhaust their administrative remedies even if they are seeking only money

---

[2] Plaintiff's meaning is unclear. When he states that defendant Mattie attempted to have plaintiff receive a misbehavior report on June 22, 2013, it appears that he is stating that defendant Mattie was doing this at the behest of defendant O'Harer, (who wished to retaliate against plaintiff for the Court of Claims action), because plaintiff states that the grievance department did not receive plaintiff's grievance against defendant O'Harer until June 28, 2013, and plaintiff asserts that he wrote the grievance against defendant O'Harer on June 24, 2013. (Compl. at  ¶¶ 13-15). Defendant Mattie could not have been retaliating against plaintiff on June 22, 2013 for a grievance that he did not write until June 24 and that was not filed until June 28.

damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents. *Weidman v. Wilcox*, No. 6:12-CV-6524, 2014 WL 1056416, at *2-3 (W.D.N.Y. Mar. 17, 2014) (dismissing for failure to state a claim because plaintiff admitted that he failed to exhaust his administrative remedies); *Pagan v. Westchester County*, No. 12 Civ. 7669, 2014 WL 982876, at *10 (S.D.N.Y. Mar. 12, 2014) (citing inter alia *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).

In *Jones v. Bock*, the Supreme Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must ***complete*** the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly

affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). However, if the inmate wishes to file a grievance, he must first file his grievance with the Inmate Grievance Resolution Committee ("IGRC") within twenty one days of the alleged occurrence forming the basis for his grievance. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the facility within seven (7) calendar days after receipt of the IGRC's written response. *Id.* § 701.5 (c)(1). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC") within seven calendar days after receipt of the Superintendent's written response. *Id.* § 701.5(d)(1).

There are also special procedures that may be used when the grievance is categorized as "harassment." *Id.* § 701.8. A grievance alleging harassment by staff may be sent directly to the Superintendent, and the Superintendent must issue a decision within twenty-five (25) days. The CORC has thirty (30) days to resolve any appeal. *Id.* §§ 701.8(f), 701.8(i) (incorporating by reference § 701.5(d)(2)(ii)).

Extensions of the statutory time deadlines may be granted where the inmate demonstrates "mitigating circumstances." *Id.* § 701.6(g). However, section 701.6 states that, except when the late appeal asserts a failure to implement a decision, "[a]n exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence" *Id.* § 701.6(g)(1)(*b*). The inmate may pursue a complaint that he was improperly denied an exception to the time limit by filing a separate grievance. *Id.* § 701.6(g)(1)(*b*)(ii). Finally, matters that are not decided within

the statutory time frames, without a request for an extension by facility personnel, and the grievant's consent, may be appealed to the next level by the inmate. *Id.* § 701.6 (g)(1)(*b*)(ii)(2).

Because courts have held that there are still some limited exceptions to the exhaustion requirement, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id. See also Johnson v. Schriro*, No. 12 Civ. 7239, 2013 WL 5718474, at *3 (S.D.N.Y. Oct. 15, 2013) (citing *Pease v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006)).

## B.    Application

In this case, plaintiff alleges that he "used the prison grievance procedure" at Auburn "to try and solve the problem, concerning the alleged June 30, 2013 assault. (Compl. ¶ 22; Dkt. No. 1 at 11). Plaintiff states that the grievance was investigated, and plaintiff was informed by the investigating Sergeant that he would "return to see [plaintiff]," but when plaintiff did not hear anything after two weeks, he appealed to the superintendent. (*Id.*) At the time plaintiff filed his complaint, he was "awaiting such decision." (*Id.*)

8

Plaintiff alleges that he "use[d] the appeal mechanism" for the June 30, 2013 "false" misbehavior proceeding by appealing the adverse determination to the "Commissioner of disciplinary appeals." (*Id.* ¶ 24; Dkt. No. 1 at 12). Plaintiff also alleges that he "used" the prison grievance procedure regarding the June 30, 2013 incident in which defendants allegedly destroyed his property, and at the time he filed his complaint, he was "awaiting a decision."[3]

In plaintiff's response to the defendants' motion to dismiss, plaintiff concedes that the PLRA requires exhaustion of administrative remedies, but argues that he sufficiently exhausted his remedies because the "retaliation for bringing forth such grievance complaints against all named defendants was cruel and unusual punishment," and that this "warranted immediate relief through this court." (Dkt. No. 28 at 7-8). Plaintiff also states that the CORC "now" has up to six months to render a final decision, and implies that this is too long to wait because of the defendants conduct, which plaintiff could not "endure." (*Id.* at 9). Plaintiff is apparently arguing that he was compelled to file this action prematurely because the defendants were "retaliating" against him for filing the grievances, to the point where he had to ask the court for a temporary restraining order ("TRO") to "stop the retaliation." (*Id.* at 8-9).

Plaintiff states that this court denied his motion for injunctive relief, and in the interim, plaintiff exhausted all administrative appeals. (*Id.* at 8) Plaintiff has attached

---

[3] It is unclear from the complaint whether plaintiff filed a grievance only with respect to the destruction of his property or whether he included the claim that the destruction of the property was in retaliation for the Court of Claims action. In order to exhaust his retaliation claim, plaintiff would have to include "retaliation" in the grievance. In any event, it is clear that at the time plaintiff filed the complaint, his "use" of the grievance program was not "complete."

copies of the grievances and the final decisions to his response to the defendants' motion to dismiss. (*Id*. at 19-35). Defendants maintain that plaintiff has still failed to show that he properly exhausted his administrative remedies. (Dkt. No. 29).

This court agrees. As stated above, the plaintiff must "complete" the administrative appeal process *prior to* filing his civil rights action. Although plaintiff filed a grievance against defendant O'Harer, complaining about the lack of access to the law library, he never alleged that the denial was due to retaliation for filing the Court of Claims action. (Dkt. No. 28 at 19-20). Plaintiff also filed a grievance regarding the allegedly false misbehavior report and the alleged assault, but never completed the administrative process until long after he filed this federal complaint. (Dkt. No. 28 at 31-32). The Superintendent referred plaintiff's "staff misconduct" grievance to the DOCCS Inspector General's Office on August 21, 2013. (Dkt. No. 28 at 33). Plaintiff mailed his federal complaint on August 20, 2013. (Dkt. No. 1). Plaintiff admits on the face of his complaint that he was awaiting "responses" from his grievances. (Compl. at ¶¶ 21-23). He *never* mentions any grievances that alleged retaliation for filing his Court of Claims Action. Thus, he admittedly failed to exhaust his administrative remedies, and these admissions are borne out by the documents attached to his response to defendants' motion to dismiss.

In his response to the motion to dismiss, plaintiff claims that the assault grievance also contained the retaliation claim. (Dkt. No. 28, ¶ 16). The grievance that plaintiff filed on July 1, 2013[4] alleges that defendant Mattie filed a false misbehavior

---

[4] The grievance is attached to plaintiff's response papers. (Dkt. No. 28 at 31-32).

report, and then assaulted plaintiff together with "other officers."[5] (Dkt. No. 28 at 31-32). Plaintiff claimed that defendant Mattie "has a history of falsely accusing and setting inmates up . . . ." (*Id.* at 31). However, there is absolutely no mention of retaliation for filing the June 24th claim against defendant O'Harer, nor is there any mention that defendant O'Harer asked defendant Mattie to falsely accuse plaintiff or assault plaintiff because he filed a Court of Claims action. Thus, plaintiff has completely failed to exhaust any retaliation claims.

Plaintiff believes that he should be excused from the exhaustion requirement with respect to the claims that were exhausted *after* plaintiff filed this federal action, because he claims that he was compelled to file a request for injunctive relief in federal court prior to exhaustion due to the defendants' conduct. (Dkt. No. 28 at 8). However, an examination of plaintiff motion for a TRO, and the court's decision on this issue, shows that the TRO/Preliminary Injunction was denied because plaintiff was seeking to enjoin speculative "future" conduct. Thus, the court found that there was no "retaliation" occurring, contemporaneous to plaintiff moving for the injunctive relief. The plaintiff's administrative remedies were clearly "available" because plaintiff utilized them; the defendants did not prevent plaintiff from filing grievances; and there are no other "special circumstances" that would excuse plaintiff's failure to wait until the administrative process was complete.

---

[5] As stated above, this grievance is attached to plaintiff's response to defendants' motion to dismiss. (Dkt. No. 28). Because plaintiff refers to the grievances in his complaint and makes statements in his response about facts contained in those grievances, the court may consider them in conjunction with the motion to dismiss without converting the motion into one for summary judgment.

Even though plaintiff ultimately received a response from the CORC regarding the assault, (Dkt. No. 28 at 35), the law is quite clear that if the administrative remedies were completed after plaintiff filed his federal complaint, the action is still subject to dismissal for failure to exhaust. *See e.g. Neal v. Goord*, 267 F.3d 116, 122 (S.D.N.Y. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002) (subsequent exhaustion after suit is filed is insufficient); *Ford v. Smith*, No. 9:12-CV-1109, 2014 WL 652953, at *3 (N.D.N.Y. Feb. 19, 2014) (receiving a decision from CORC *after filing* a federal lawsuit does *not* satisfy the exhaustion requirement); *Harris v. Gunsett*, No. 12 Civ 3578, 2013 WL 3816590, at *2 (S.D.N.Y. July 22, 2013) (stating that even if plaintiff had exhausted his administrative remedies since he filed his complaint, it did not "change the fact that he failed to do so at the time at which he initiated the instant litigation"); *Baez v. Kahanowicz*, 469 F. Supp. 2d 171, 179 (S.D.N.Y. 2007) (claim must be completely exhausted prior to filing suit).

Thus, plaintiff's failure to exhaust his administrative remedies as to his remaining two claims may not be excused, and his failure to do so prior to filing this lawsuit requires dismissal of the entire action. The dismissal would be without prejudice to plaintiff re-filing his complaint, having obtained final dispositions of the grievances that he filed. It appears from the documents submitted by plaintiff that he only completed the administrative process with respect to the excessive force claim, and he never raised his retaliation claims in any of the grievances. Because plaintiff has only 21 days to file a grievance, any grievance that he attempts to file regarding his

retaliation claims may be met with dismissal as untimely.[6]  If so, plaintiff would not be able to return to federal court to raise the retaliation claims.  This court need not engage in speculation about whether plaintiff would be given the opportunity to file a late grievance claiming retaliation because the court finds that plaintiff's retaliation claim may also be dismissed on the merits, leaving only his excessive force claim as a viable claim to re-file.

## IV.  **Retaliation**

### A.  **Legal Standard**

In order to establish a claim of retaliation for the exercise of a First Amendment right, plaintiff must show that he engaged in constitutionally protected speech or conduct, and that the protected activity was a substantial motivating factor for "adverse action" taken against him by defendants.  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *see also Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997).  The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'"  *Gill v. Pidlypchak*, 389 F.3d at 381 (citation omitted).  This objective test applies whether or not the plaintiff was himself subjectively deterred from exercising his rights.  *Id.*

To establish retaliation, the plaintiff must also establish a causal connection

---

[6] The dismissal of grievances as "untimely" constitutes failure to exhaust. *Robinson v. Henschel*, No. 10 Civ. 6212, 2014 WL 1257287, at *10 (S.D.N.Y. Mar. 26, 2014) (citing *Soto v. Belcher*, 339 F. Supp. 2d 592, 595 (S.D.N.Y. 2004)).  Thus, if plaintiff's should return to bring a new grievance with respect to his retaliation claim, and the grievance is dismissed as untimely, he will not be able to re-file his claim in federal court in any event.

between the protected speech or conduct and the adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). Although a "'plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action[,]' "[s]uch circumstantial evidence of retaliation, . . . without more, is insufficient to survive summary judgment." *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) (citations omitted).

A prison inmate has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). However, if a defendant initiated disciplinary proceedings against plaintiff in retaliation for his exercise of a constitutionally protected right, substantive due process rights may be implicated even if the plaintiff did receive full procedural due process. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988). Any adverse action taken by defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Id.*

Even if plaintiff makes the appropriate showing of retaliation, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.* at 371. The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim. *Bennett*, 343

14

F.3d at 137. "Threadbare" assertions of retaliation will not survive a motion to dismiss. *Dolan v. Connolly*, 2014 WL 1876524, at *11 (citing inter alia *Crenshaw v. Hartman*, 681 F. Supp. 2d 412, 417 (W.D.N.Y. 2010) (dismissing retaliation claim where it was unsupported by any facts showing a nexus between the adverse action and any constitutionally protected activity by plaintiff)).

### B.    Application

The first of plaintiff's two remaining claims is a First Amendment retaliation claim against defendants O'Harer and Mattie. Plaintiff alleges that the defendant O'Harer's actions in *2013* at *Auburn*, were in retaliation for a Court of Claims action that plaintiff filed in *2011* against medical personnel at *Attica*. While there is no dispute that filing a lawsuit is a constitutionally protected act, there is only the most conclusory basis for asserting a nexus between the defendant O'Harer's actions and plaintiff's protected activity.

First, plaintiff must state how defendant O'Harer would even be aware of the 2011 lawsuit in order for plaintiff to allege that this defendant retaliated against plaintiff for filing the 2011 action. Plaintiff alleges that defendant O'Harer was well aware of all the details of the action because he had to "approve" the special access. In plaintiff's response to the motion to dismiss, he clarifies the facts of the alleged "retaliation." (Dkt. No. 28 ¶ 8). Plaintiff states that he was granted "special access to the law library on June 13, 2013, and that in order to obtain permission for special access, plaintiff had to "confirm [that plaintiff] does have a Court Order[ed] deadline before the defendant David O'Harer." (*Id.*) Plaintiff claims that he presented his legal

documents to defendant O'Harer,[7] who became "angry and hostile" because he disliked the fact that plaintiff was suing New York State and was seeking the names of key witnesses, but he granted plaintiff two weeks of special access. (*Id.*)  Assuming that plaintiff was actually granted two weeks of special access,[8] rather than one week, it is not plausible that defendant O'Harer was so upset about plaintiff's lawsuit that he granted plaintiff twice time allowed under the special access rules.[9]

With respect to defendant O'Harer taking plaintiff off of the special access list, plaintiff *admits* that he failed to attend two call-outs.  He asserts in his response to the defendants' motion to dismiss that there was a good excuse for failing to attend the call-outs. (*Id.* at 4-5).  Plaintiff states in his response and in the grievance he filed regarding this incident that he did not attend the call-outs because he was given a mandatory call-out for his "institutional job," and his supervisor was going to call the library to let someone know about plaintiff missing the library call-out. (*Id.* at 4).  Plaintiff claimed in his grievance that Officer Myers and defendant O'Harer failed to properly investigate

---

[7] Although the court is not making such a finding, it appears that the plaintiff's special access request was not approved or signed by defendant O'Harer. (Dkt. No. 28 at 17).  Thus, plaintiff may never have submitted his legal documents to this defendant.  Plaintiff makes this claim because it is the only way that he could claim that defendant O'Harer became angry over plaintiff's lawsuit.

[8] The court will simply assume that plaintiff was granted the two week special access.

[9] The court notes that the special access rules only allow "seven (7) consecutive days" of special access, and that the last day of special access would have been June 20, 2013, the second day that plaintiff missed his call-outs. (Dkt. No. 28 at 17-18).  Thus, under normal circumstances, plaintiff would not have been allowed to continue his special access to the law library after June 20, 2013 (seven consecutive days after access was granted on June 13, 2013. (Dkt. No. 28 at 17).

the plaintiff's reasons.[10]  Plaintiff claimed that the officers never called his job

supervisor to confirm his whereabouts. (*Id.*)  It is clear, however, that plaintiff did miss

the call-outs, and that defendant O'Harer could have removed plaintiff from the special

access list notwithstanding any intent to retaliate.

Plaintiff's grievance never mentioned that defendant O'Harer was retaliating for

plaintiff's lawsuit.[11]  In any event, defendant O'Harer was a law library officer, who

may or may not have seen plaintiff's documents.  Even assuming that he did see the

documents, it not plausible that defendant O'Harer would have become angry and

hostile because plaintiff was suing "New York State" in the Court of Claims and was

looking for the names of witnesses.  Most of the inmates who use the law library are

doing so because they are filing or have filed a lawsuit.  Any time that defendant

O'Harer took an adverse action against an inmate, the inmate could claim that

defendant O'Harer was retaliating due to the inmate's legal activities.  Thus, plaintiff's

retaliation claim against defendant O'Harer would be subject to dismissal regardless of

---

[10] Plaintiff's library grievance was filed against defendant O'Harer and Officer Myers, who is not a defendant in this action. (Dkt. No. 28 at 19).  There is no claim of retaliation in the grievance, and Officer Myers is listed before defendant O'Harer on the grievance. (*Id.*)

[11] It is not necessary for the court to base its decision on any information in plaintiff's grievance for this particular issue, because he admits that he failed to appear for two call-outs.  However, plaintiff has referred to the grievances specifically in his complaint, and he has filed copies of the grievances in his response to the motion to dismiss.  Thus, the court could consider the documents in conjunction with the motion to dismiss for failure to state a claim.  As stated above, in deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference.  *Rothman v. Gregor*, 220 F.3d at 88; *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

his failure to exhaust.

Finally, it unlikely that defendant O'Harer, a law library officer at Auburn, would be retaliating against plaintiff for a lawsuit that plaintiff filed two years earlier against New York State,[12] claiming malpractice against medical personnel at Attica that defendant O'Harer probably did not even know. *See, e.g., Hare v. Hayden*, 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendants retaliation for complaints against another defendant.") (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about a prior incident by another corrections officer); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (plaintiff failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in) (collecting cases); *Ciaprazi v. Goord*, 9:02-CV-915 (GLS/DEP), 2005 WL 3531464, at *8-9 (N.D.N.Y. Dec. 22, 2005) (granting summary judgment and dismissing retaliation claim based only on plaintiff's conclusory allegations that the manifest falsity of the misbehavior report and testimony during the disciplinary hearing indicated the disciplinary matters were motivated by retaliatory animus due to grievances plaintiff filed against individuals other than the defendants involved in the disciplinary action). Thus, plaintiff's claims of retaliation against defendant O'Harer fail to state a claim.

---

[12] There is no individual liability in the Court of Claims, thus, plaintiff cannot claim that defendant O'Harer was trying to "protect" an individual who he may have known.

Plaintiff claims that defendant Mattie's motivation for filing the false misbehavior report, for orchestrating the assault on plaintiff, and for the various forms of property destruction claimed by plaintiff, was plaintiff's grievance against defendant O'Harer. The court would first point out that plaintiff's claims against defendant Mattie for attempting to misinform plaintiff so that he would receive a misbehavior report for "being out of place" occurred on June 22, 2013, six days prior to the grievance committee even receiving plaintiff's grievance against defendant O'Harer on June 28, 2013. It is impossible for defendant Mattie to retaliate for a grievance that would not be filed for six days against another officer.

When plaintiff brought his grievance on July 1, 2013, against defendants Mattie and Kimak, accusing defendant Mattie of filing a false misbehavior report and defendants Mattie and Kimak of the subsequent assault, plaintiff never mentioned that defendant Mattie was retaliating against plaintiff "on behalf of" defendant O'Harer because of the one grievance that he filed against defendant O'Harer. (Dkt. No. 28 at 31). In fact, plaintiff accused defendant Mattie of having mental problems and having a "history" of false accusations against "*inmates*." (*Id.* at 31). This has nothing to do with plaintiff's legal activities or his grievance against defendant O'Harer.

Plaintiff similarly accuses defendant Kimak of "retaliation" in addition to the assault.[13] His allegation against defendant Kimak is even more speculative. (Compl. ¶ 29). Plaintiff simply alleges that defendant Kimak was called to the housing unit to

---

[13] Senior Judge McAvoy's decision did not address any claim of retaliation as against defendant Kimak. This may be so because plaintiff only briefly alleged retaliation in one conclusory sentence in the complaint. (Compl. ¶ 29).

escort plaintiff to SHU after defendant Mattie accused plaintiff of misbehavior. (Compl. ¶ 15 at p.7). There is absolutely no indication that defendant Kimak was aware of, or retaliated for, any "grievance" filed by plaintiff against defendant O'Harer, the only one of which plaintiff alleges was filed two days prior to the "assault." Thus, the retaliation claim may be dismissed as against defendant Kimak.

Thus, plaintiff's claims of retaliation may be dismissed without prejudice for failure to state a claim. The only claim that remains is plaintiff's claim against defendants Mattie and Kimak for their involvement with the alleged assault, which is a claim apart from any retaliation claim.

## V.   <u>Eleventh Amendment</u>

### A.   **Legal Standards**

The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. Id. at 815 n.3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991) (citations omitted).

### B.   **Application**

In this case, to the extent that plaintiff is attempting to sue the defendants in their official capacities for *damages*, the Eleventh Amendment would also bar the action. In his response to defendants' motion, plaintiff alleges that he is also seeking injunctive

relief that would not be barred by the Eleventh Amendment. The Eleventh Amendment immunity does not preclude suits for prospective declaratory and injunctive relief against state officers in their "official" capacities. *Neroni v. Zayas*, No. 3:13-CV-127, 2014 WL 1311560, at *7 (N.D.N.Y. March 31, 2014) (citing inter alia *Ex Parte Young*, 209 U.S. 123 (1908)).

However, in order to avoid the Eleventh Amendment bar, a plaintiff must (a) allege an ongoing violation of federal law, and (b) seek relief that is properly characterized as prospective. *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Maryland, Inc. v. Pub. Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002); *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005)). A plaintiff seeking injunctive relief may not rely on past injury, but must show a likelihood that he will be injured in the future and the existence of an official policy or its equivalent. *Peck v. Baldwinsville Cent. School Dist.*, 351 F. App'x 477, 479 (2d Cir. 2009) (citations omitted). If he cannot make this showing, he lacks standing for declaratory and prospective injunctive relief. *Id.*

In this case, plaintiff cannot meet the first requirement for prospective injunctive relief: an ongoing violation of federal law for his remaining claims. He claims one incident in which he was assaulted by defendants Mattie and Kimak. His speculation about future harassment, "physical violence, threats, [and] destruction of personal property" are completely speculative. (Compl. ¶ 32). Even plaintiff's retaliation claim, if it were to proceed, does not allege anything other than speculative future conduct. There is no allegation of any ongoing policy that could be enjoined.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 23) be

**GRANTED AND THE COMPLAINT DISMISSED IN ITS ENTIRETY**

**WITHOUT PREJUDICE FOR FAILURE TO EXHAUST ADMINISTRATIVE**

**REMEDIES**, and it is

**RECOMMENDED**, that plaintiff's First Amendment retaliation claim be

dismissed **WITHOUT PREJUDICE FOR FAILURE TO EXHAUST AND FOR**

**FAILURE TO STATE A CLAIM**, and it is

**RECOMMENDED**, that plaintiff's official capacity claims be dismissed **WITH**

**PREJUDICE** as barred by the Eleventh Amendment.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen days within which to file written objections to the foregoing report. Such

objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary*

*of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 28, 2014

_Andrew T. Baxter_

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**